UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC NORTHWEST NEWSPAPER GUILD, CWA LOCAL 37082, a labor organization,<br><br>Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC., a Delaware Corporation, owner of the SEATTLE POST-INTELLIGENCER,<br><br>Defendant. | No. C07-1490Z<br><br>ORDER |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment, docket no. 12, and Plaintiff's Motion to Dismiss Counterclaims, docket no. 16.  Having considered the briefs and declarations in support of, and in opposition to, the motions, and after having heard oral argument on January 24, 2008, the Court enters the following Order.

**BACKGROUND**

    **A.**    <u>**New Media Agreement – February 1998**</u>

In February 1998, Plaintiff, the Pacific Northwest Newspaper Guild Communications Workers of America Local 37082 (the "Guild"), and Defendant Hearst Newspapers LLC (named in the Complaint as Hearst Communications, Inc.), d/b/a the Seattle Post-Intelligencer (the "P-I" or "Publisher"), signed an agreement that addressed the assignment of

ORDER   1–

"new media" work to Guild and non-Guild employees. Iglitzin Decl., docket no. 13, Ex. F (the "New Media Agreement" or "NMA"). The New Media Agreement recognized that the P-I had created a "non-Guild New Media Department . . . to investigate and experiment with a variety of new electronic services and products;" that "[e]mployees represented by the Guild may be assigned to perform work for any new or existing service;" that Guild-covered employees "will continued to be represented by the Guild and covered by the collective bargaining agreement then in effect;" that "Guild-covered employees assigned to perform work . . . for any new or existing service, project or product shall receive the compensation, benefits, terms and conditions of each employee's home department;" and that "*[t]he grievance process shall be limited to enforcing the contract on behalf of employees represented by the Guild who are assigned to new or existing service, projects and products.*" Id., Ex. F at 1-2, ¶¶ 1-3 (emphasis added to Paragraph 3 of the NMA). The New Media Agreement did not contain any "grievance process." The New Media Agreement did not contain a term of existence or any procedures for terminating the Agreement.

### B. Guild's Unilateral Termination of New Media Agreement – March 2006

On March 28, 2006, the Guild sent the P-I a letter "as formal notification that the union hereby terminates the New Media Agreement signed between the Guild and the Seattle Post-Intelligencer in February 1998." Iglitzin Decl., Ex. G. The Guild's March 28, 2006 Letter further provided:

> It has been eight years since the New Media Agreement was negotiated and signed. As we both know, the convergence of web and print publishing means that changes in technology and practices can render an agreement obsolete after eight months, let alone eight years. We believe the New Media Agreement has outlived its relevance, which is why *we are terminating it at this time*. In addition, *we are no longer interested in maintaining or pursuing side agreements* outside our contract. Such agreements tend to be forgotten. Members rightly look for information in their contract, the appropriate vehicle for such agreements.

Id., Ex. G (emphasis added).

ORDER   2–

### C. Collective Bargaining Agreement – August 2006

On August 30, 2006, approximately five months after the Guild unilaterally terminated the New Media Agreement, the Guild and the P-I signed a collective bargaining agreement (the "CBA"). Iglitzin Decl., Ex. A.[1] The CBA is silent on issues raised in the New Media Agreement. See id.; Lynch Decl., docket no. 21, ¶ 14.

The CBA's preamble provides that the CBA "is made effective as of July 21, 2006," and further provides that the Guild represents "all the employees of the Publisher in the Editorial and Business Office," with enumerated exceptions. Iglitzin Decl., Ex. A at 1.

Article 2 of the CBA governs the Guild's jurisdiction:

> ARTICLE 2 - JURISDICTION
>
> It is agreed that the Guild has, and shall retain, jurisdiction over all work presently being performed by Guild members in the Editorial and Business Office, except for those jobs specifically excluded under the Preamble of this agreement. It is further agreed that ***new or additional work of the same type presently being performed by Guild members in the Editorial and Business Office shall be under the jurisdiction of the Guild***.

Id., Ex. A at 2 (emphasis added). Article 10 of the CBA contains a grievance procedure and an arbitration clause, which provides in pertinent part:

> ARTICLE 10 - ADJUSTMENT OF DISPUTES
>
> (A) A Grievance Committee, designated by the Guild, shall be established to settle amicably with a committee appointed by the Publisher, ***all grievances arising under this contract***.
>
> (B) A grievance shall be submitted only by a written notice from the complaining party to the other party briefly setting forth the facts giving rise to the grievance, the ground of complaint and the action sought. . . .
>
> (C) ***A grievance raised under (A) of this section, and not settled*** within thirty (30) calendar days after receipt of the written notice hereinbefore described (this time may be extended by mutual agreement) ***may be submitted to arbitration***, in accordance with the procedures hereinafter set forth, ***upon written notice of either party served upon the other party***. . . .

---

[1] Prior to 2006, the parties had entered into other collective bargaining agreements.

ORDER   3–

> (1) The Publisher and the Guild shall jointly request from the American Arbitration Association a panel of eleven (11) arbitrators from the Washington and Oregon geographic region. Selection of an arbitrator shall be made in accordance with the rules and procedures of the American Arbitration Association (AAA). Nothing herein shall be construed as authorizing the AAA to select an arbitrator without the mutual agreement of the Publisher and the Guild.
>
> (2) The arbitrator shall follow rules of procedure agreed to by the parties, but in the absence of the agreement thereon, the rules of the voluntary labor arbitration tribunal of the AAA shall govern.
>
> (3) Notwithstanding any AAA rules, in any case where either party contests the arbitrability of the grievance, the arbitrator shall hold a separate proceeding and rule on that issue prior to hearing the matter on the merits.
>
> Absent agreement of the parties, the issue of arbitrability shall be ruled on within ten (10) business days of the arbitrability hearing.

Iglitzin Decl., Ex. A at 7-8 (emphasis added). The CBA does not contain an integration clause.

### D. Guild's July 2, 2007 Grievance

On July 2, 2007, the Guild submitted a grievance to the P-I, setting forth the following facts giving rise to the grievance, ground of complaint, and remedy sought:

Statement of Grievance:

On June 7, 2007, the employer informed the Guild that a new position, called 'online reporter,' would be hired outside the jurisdiction of the bargaining unit.

Section(s) of Contract Violated (including but not limited to):

Article 2 (Jurisdiction); Preamble, and standards of reasonableness and fairness

Remedy of Grievance:

The position of 'online reporter' should be acknowledged as Guild work that is within the Union's jurisdiction.

Iglitzin Decl., Ex. B.

ORDER  4–

### E.  Guild's August 30, 2007 Demand for Arbitration

On August 30, 2007, the Guild filed a Demand for Arbitration with the American Arbitration Association (the "AAA"). Iglitzin Decl., Ex. C.  The P-I objected to arbitration and asked the AAA to cease processing the Demand for Arbitration. Id., Ex. D.  First, the P-I contended that the Guild failed to secure the consent of the P-I to select an arbitration panel pursuant to Article 10, Section (C)(1) of the CBA. Id., Ex. D at 1-2.  The P-I subsequently refused to consent to an arbitration panel. Id., Exs. H, I.  Second, the P-I contended that the Guild's grievance "involves matters of federal labor law that are not subject to arbitration." Id., Ex. D at 2.  On October 2, 2007, the AAA closed the file. Siemer Decl., docket no. 20, Ex. 9.

### F.  P-I's Petition for Unit Clarification

On October 11, 2007, the P-I filed a "Petition for Unit Clarification," with the National Labor Relations Board (the "NLRB"). Iglitzin Decl., Ex. J.  The P-I's Petition for Unit Clarification sought to exclude "all employees employed in the New Media Department" from the Guild's bargaining unit. Id., Ex. J (Attachment to Unit Clarification Petition, proposing an amendment to the description of the Guild's bargaining unit in the Preamble of the CBA).

### G.  Guild's October 18, 2007 Letter

On October 18, 2007, the Guild sent the P-I a letter "to clarify the intent of the Union in filing and pursuing what has previously been referred to as the 'Online Reporter Grievance.'" Iglitzin Decl., Ex. K.  The Guild's October 18, 2007 Letter further provided:

> As you know, Article II of our Agreement states that the Guild will have 'jurisdiction over all work presently being performed by Guild members in the Editorial and Business Office,' with certain exceptions. Based on this language, it is our position that ***the P-I is not entitled to assign to any person who is not in the Guild's bargaining unit work of the type which was being performed by Guild members in the Editorial and Business Office on or about July 21, 2006***. We believe that this work includes the reportorial work which we believe and allege has subsequently been assigned to, and is

ORDER  5–

> currently being performed by Monica Guzman, who you have designated an 'Online Reporter.'
>
> It is ***not our intent, through this grievance, to attempt to include either Monica Guzman or the Online Reporter position within our bargaining unit***, and we will not be seeking any arbitration decision awarding such a remedy. ***The only remedy we seek***, or will be seeking, ***is an order prohibiting the P-I from assigning reportorial work of the type currently being performed by the Online Reporter,*** which we contend is work which our members are exclusively entitled to perform, ***to any P-I employee not included within the Guild's bargaining unit***, and an appropriate 'make whole' award to any Guild members who may have lost wages or benefits as a result of the P-I's contract violation.

Id., Ex. K at 1-2 (emphasis added); see also Siemer Decl., docket no. 20, Ex. 12 (Email from Dmitri Iglitzin, dated Oct. 28, 2007, to Charles Cohen) (stating union position that no "unit clarification" is necessary).

On October 29, 2007, the P-I asserted by letter that the Guild's October 18, 2007 Letter "effectively constitutes a withdrawal of the Guild's original grievance filed in July and the submission of a new grievance which disputes the assignment of work by the P-I." Iglitzin Decl., Ex. M. The Guild responded by letter that it has not withdrawn, and will not withdraw, the July Grievance. Id., Ex. N at 1.

### H.    NLRB's Dismissal of P-I's Petition for Unit Clarification

On October 29, 2007, the NLRB entered an Order dismissing the P-I's Petition for Unit Clarification based upon the "absence of any dispute about the unit placement of the on-line reporter in the New Media department." Iglitzin Decl., Ex. L at 2. The NLRB's Order explained: "As the [Guild] is not attempting to bring any unrepresented employee into an existing bargaining unit, . . . this dispute is not one of unit scope, but rather one of contract interpretation." Id.

### I.    Present Action and Present Motions

The Guild alleges that the P-I has breached Article 10 of the CBA by refusing to arbitrate a dispute about the Guild's jurisdiction over online reporter work under Article 2 of the CBA. Complaint, docket no. 1, ¶¶ 5.1-5.4.

ORDER  6–

The P-I alleges in two counterclaims that: (1) the Guild has breached the CBA by not following the CBA's grievance processes with respect to the October 17, 2007 Letter, which the P-I refers to as the "October Grievance," and (2) the Guild has breached the CBA and the New Media Agreement by unilaterally attempting to repudiate the New Media Agreement and by seeking arbitration of the "October Grievance." Answer, Affirmative Defenses and Counterclaims of Defendant (the "Counterclaims"), docket no. 11, ¶¶ 26-32.

Two motions are pending before the Court. The Guild has filed a motion for summary judgment, docket no. 12, seeking an order to compel arbitration. The Guild has also filed a motion to dismiss the two breach of contract counterclaims, docket no. 16.

# DISCUSSION
## I. Plaintiff's Motion for Summary Judgment, docket no. 12
### A. Summary Judgment Standard

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

### B. Arbitrability of Dispute
#### 1. Applicable Law Favors Arbitration

There is a presumption of arbitrability for labor disputes where the contract contains an arbitration clause. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). "'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960)); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved

ORDER  7–

in favor of arbitration."). "'In the absence of any express provision excluding a particular grievance from arbitration,[2] . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT & T Techs., 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 584-585).

### 2. July Grievance Indisputably Within Scope of Arbitration Clause

Article 10, Section A provides that "all grievances arising under this contract" shall be settled amicably, if possible, between a grievance committee designated by the Guild and a committee appointed by the P-I. The July Grievance asserts that the dispute arises under the preamble and Article 2 of the CBA. Iglitzin Decl., Ex. B.

### 3. P-I's Two Arguments in Opposition to Arbitration of July Grievance

The P-I argues that the Guild's summary judgment motion should be denied, and arbitration not compelled, because there are material disputes as to the "October Grievance" and as to the status and effect of the New Media Agreement.

#### a. The "October Grievance"

The parties debate the scope of the remedy sought in the July Grievance, as compared to the remedy outlined in the October 17, 2007 Letter.[3] The P-I argues that by altering the remedy, the Guild withdrew the July Grievance through the Guild's October 18, 2007 Letter. Whether the Guild withdrew the July Grievance by sending the P-I a letter in October to "clarify" the remedy should be considered in connection with the arbitration

---

[2] The parties, in Article 10, Section D, of the CBA, used language to expressly exclude certain topics from the grievance and arbitration procedures. This shows that the parties knew how to exclude a topic if they wanted to.

[3] The P-I characterizes the October 17, 2007 Letter as a grievance, and then argues that the Guild cannot compel arbitration of the "October Grievance" because the Guild has not followed the grievance process in Article 10 of the CBA with respect to this letter. Neither the Guild nor this Court considers the October 17, 2007 Letter to be a separately filed grievance. See Pl.'s Reply to Mot. Summ. J., docket no. 30, at 4; Pl.'s Mot. Dismiss, docket no. 29, at 3-4.

ORDER   8–

proceedings. Article 10, Section (C)(3) of the CBA requires an arbitrator to determine arbitrability, even though normally arbitrability is an issue for the Court. The P-I argues that courts should decide arbitrability where a matter is specifically excluded from arbitration, but, here, the Guild's jurisdiction over online reporter work has not been specifically excluded from arbitration. The P-I also argues that it should not be compelled to arbitrate the remedy sought in the October 18, 2007 Letter because it is inconsistent with the remedy sought in the July Grievance. The July Grievance is ambiguous as to whether the Guild's intentions are to bring the online reporter position within the Guild's bargaining unit or, in the alternative, to require the P-I to assign online reporter work to Guild members because such work is within the Guild's jurisdiction. The July Grievance is susceptible to both meanings, and is not necessarily inconsistent with the October 18, 2007 Letter. This lack of inconsistency distinguishes the present case from Chicago Tribune Co. v. Chicago Typographical Union No. 16/CWA 14408, 1992 U.S. Dist. LEXIS 13646 (N.D. Ill. 1992). The Guild has met its burden of demonstrating the parties' intent to have an arbitrator decide arbitrability. See Warrior & Gulf, 363 U.S. at 583 n.7. Accordingly, an arbitrator may decide the arbitrability of the July Grievance in light of the October 17, 2007 Letter.

### b.    **New Media Agreement**

The P-I argues that Paragraph 3 of the New Media Agreement bars the arbitration of the July Grievance. The Court must determine whether Paragraph 3 of the New Media Agreement represents "forceful evidence of a purpose to exclude the claim from arbitration." See AT & T Techs., 475 U.S. at 650.

### i.    **Termination of New Media Agreement**

A threshold issue is whether the Guild's March 28, 2006 Letter terminated the New Media Agreement. This is a legal, not a factual, issue that can be determined on summary judgment. The Guild argues that the New Media Agreement was terminable at will by either party at any time because it had no express termination date and identified no other event at

ORDER  9–

which point it would cease to be in effect. See Commc'ns Workers of Am. AFL-CIO v. Southwestern Bell Tel. Co., 524 F. Supp. 1031, 1034 (S.D. Tex. 1981) ("It is well settled that a labor contract of indeterminate duration is terminable at will by either party upon reasonable notice to the other party."); see also Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co., 135 Wn. App. 760, 766 (2006) ("When a contract for a continuing performance fails to specify the intended duration, we construe it to be terminable-at-will by either party after a reasonable time" upon "giv[ing] reasonable notice to the other party.").

The P-I argues that the Guild failed to provide "reasonable notice" in compliance with Section 8(d)(1) of the National Labor Relations Act ("NLRA"), which requires that notice of termination of a collective bargaining agreement be served "sixty days prior to the time it is proposed to make such termination." 29 U.S.C. § 158(d)(1). Even assuming Section 8(d) applies to the NMA, the Court lacks jurisdiction to determine whether the Guild's March 28, 2006 Letter complied with Section 8(d). That is an issue for the NLRB. See Waggoner v. Dallaire, 767 F.2d 589, 592 (9th Cir. 1985) ("[F]ederal courts lack jurisdiction to consider claims based on violations of section 8 of the NLRA. Exclusive jurisdiction over section 8 claims rests with the National Labor Relations Board."). Any claim by the P-I that the Guild's March 28, 2006 Letter violated Section 8(d) of the NLRA should have been filed with the NLRB within six months of March 28, 2006. See 29 U.S.C. § 160(b).[4] The P-I cannot now bring its Section 8(d) challenge before this Court. The P-I may have a breach of contract claim for damages for the Guild's failure to provide sixty days "reasonable notice" of termination of the NMA (i.e., Counterclaims ¶ 30). However, the failure to provide reasonable notice sixty days prior to March 28, 2006 does not compel a conclusion that the

---

[4] The P-I argues that the applicable statute of limitations is six years, not six months; however, the six year statute of limitations applies to the P-I's counterclaim for breach of the New Media Agreement, not the P-I's claim that Section 8(d) was violated.

ORDER   10–

New Media Agreement was not terminated at the time the facts giving rise to the present dispute arose.

As of June 2007, when the P-I allegedly informed the Guild that a new "online reporter" position would be hired outside the jurisdiction of the Guild, the P-I had more than a year's notice of the Guild's termination of the NMA. The P-I never contested the Guild's unilateral termination of the NMA. The Court concludes that the NMA was terminated as a matter of law at the time the facts giving rise to the present dispute arose.

### ii.   Paragraph 3 of NMA Does Not Bar July Grievance

If the Court were to find the New Media Agreement enforceable, which it does not, then the Court would need to determine whether Paragraph 3 of the New Media Agreement provides "forceful evidence of a purpose to exclude the claim from arbitration." See AT & T Techs., 475 U.S. at 650. Paragraph 3 provides that "[t]he grievance process shall be limited to enforcing the contract on behalf of employees represented by the Guild who are assigned to new or existing service, projects and products." Iglitzin Decl., Ex. F at 2, ¶ 3. Paragraph 3 is ambiguous, primarily because it refers to a "grievance process" not contained in the New Media Agreement, and it limits such grievance process to enforcing "the contract," without defining the contract. The parties have proffered different reasonable interpretations of Paragraph 3. The Court agrees with Plaintiff's counsel's statement at oral argument that "if it is arguable, then it is arbitrable." Paragraph 3 of the NMA does not provide "forceful evidence" of a purpose to bar the July Grievance from arbitration.

### 4.   Conclusion Re: Arbitrability

The Court GRANTS Plaintiff's Motion for Summary Judgment, docket no. 12, and COMPELS arbitration of the July Grievance.[5]

---

[5] The Guild argued that fees have been awarded in similar cases where the employer has refused to submit the dispute to arbitration. See Pl.'s Mot., docket no. 12, at 16. The Guild does not formally move for fees, and the Court does not award any fees.

ORDER   11–

## II.  **Plaintiff's Motion to Dismiss Counterclaims, docket no. 16**

### A.  Motion to Dismiss Standard

The Guild moves to dismiss the P-I's counterclaims against the Guild under Rule 12(b) of the Federal Rules of Civil Procedure, for failure to exhaust non-judicial remedies. The Guild argues that the P-I's counterclaims are subject to arbitration under the CBA. "[A] motion to dismiss for a failure to exhaust non-judicial remedies is properly considered a 'non-enumerated' Rule 12(b) motion," rather than a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Inlandboatmens Union of Pac. v. Dutra Group ("Dutra"), 279 F.3d 1075, 1078 n.2 (9th Cir. 2002) (quoting Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)).

### B.  First Counterclaim – Failure to Exhaust Grievance Procedures Re: the "October Grievance"

In its first counterclaim, the P-I alleges that "the Guild has improperly attempted to bypass the grievance processes set forth in Article 10 of the CBA and the parties' binding past practice in connection with the October Grievance," and "[a]ccordingly, the Guild's actions constitute a breach of Article 10 of the CBA." Counterclaims ¶¶ 27-28. The Guild argues that the P-I should be compelled to arbitrate its first counterclaim because the P-I's "grievance" arises under the CBA. However, the Guild admits that "the P-I has never filed any grievance regarding its claim that the Guild breached the CBA or New Media Agreement by filing the instant suit." Pl.'s Reply Mot. Dismiss, docket no. 29, at 6. The P-I has not presented its counterclaim as a grievance pursuant to Article 10 of the CBA. The Court DISMISSES the first counterclaim, see Counterclaims ¶¶ 27-28, as moot based on the Court's finding in connection with Plaintiff's summary judgment motion that the Guild is not seeking to compel arbitration of any "October Grievance."[6]

---

[6] The P-I does not allege in its first counterclaim that the Guild failed to exhaust procedures under Article 10 of the CBA with respect to the *July* Grievance. Accordingly, the Court

ORDER   12–

### C.     Second Counterclaim Re: Breach of the New Media Agreement and CBA

The P-I's second counterclaim has two distinct parts.  First, the P-I alleges in the first part of its second counterclaim that "[t]he Guild's unilateral attempt to repudiate the New Media Agreement is a breach of that Agreement."  Counterclaims ¶ 30.  As noted above, the P-I may have a valid claim for breach of the New Media Agreement based upon the Guild's failure to provide "reasonable notice" of termination.  Accordingly, the Court DENIES IN PART Plaintiff's motion to dismiss the first part of the P-I's second counterclaim for breach of the New Media Agreement, see Counterclaims ¶ 30.  The Court declines to send the second counterclaim to arbitration for the same reason as outlined with respect to the first counterclaim – namely, that the P-I never filed any grievance regarding this claim.  The Court STAYS the case with respect to the first part of the second counterclaim, pending the resolution of the arbitration of the Guild's July Grievance.

Second, the P-I alleges in its second counterclaim that "[t]he Guild's October Grievance is precluded from the grievance process of the CBA by virtue of the New Media Agreement," and that there has been "a breach of both the CBA and the New Media Agreement."  Counterclaims ¶¶ 31-32.  The P-I argues that Paragraph 3 of the New Media Agreement bars the arbitration of the October Grievance.  Because the Court finds, as a matter of law, that the Guild's March 28, 2006 Letter terminated the New Media Agreement, Paragraph 3 of the New Media Agreement cannot bar the Guild from pursuing a grievance in 2007.  Moreover, this second part of the P-I's second counterclaim is moot because, as previously discussed, the Guild is not intending to compel arbitration of any "October Grievance."  The Court DISMISSES the second part of the P-I's second counterclaim for breach of the CBA and New Media Agreement, see Counterclaims ¶¶ 31-32.

---

disregards the Guild's arguments related thereto and denies the P-I's request to take discovery with regard to Plaintiff's Demand for Arbitration of the July Grievance.  Def.'s Opp'n to Mot. Dismiss, docket no. 26, at 6 n.3.

ORDER   13–

## CONCLUSION

The Court GRANTS Plaintiff's Motion for Summary Judgment, docket no. 12, and COMPELS arbitration of the July Grievance. This Order fully resolves the claims in Plaintiff's Complaint, docket no. 1.

The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Dismiss Counterclaims, docket no. 16, as follows. The Court declines to send the first and second counterclaims to arbitration. The Court DISMISSES the first counterclaim, see Counterclaims ¶¶ 27-28, and the second part of the second counterclaim, see Counterclaims ¶¶ 31-32. The Court does not dismiss the first part of the second counterclaim, see Counterclaims ¶ 30, and STAYS the case with respect to this counterclaim, pending the resolution of the arbitration of the Guild's July Grievance. Upon the conclusion of the arbitration, the parties are directed to provide a joint status report to the Court and, if applicable, move the Court to reopen the case to consider the first part of the P-I's second counterclaim for breach of the New Media Agreement, see Counterclaims ¶ 30.

IT IS SO ORDERED.

DATED this 4th day of February, 2008.

Thomas S. Zilly
United States District Judge

ORDER  14–